FILED

2014 Dec-01  PM 02:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **KIMBERLY COHELEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:13-CV-1810-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | |
| **Defendant.** | |

---

## MEMORANDUM OPINION

## I.      INTRODUCTION

Plaintiff Kimberly Coheley ("Coheley") brings this action under 42 U.S.C.

§ 405(g), Section 205(g) of the Social Security Act. She seeks review of a final

adverse decision of the Commissioner of the Social Security Administration

("Commissioner"), who denied her application for disability, Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Coheley timely pursued

and exhausted her administrative remedies available before the Commissioner. The

---

[1]In general, the legal standards applied are the same regardless of whether a claimant
seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI
claims. Therefore, citations in this opinion should be considered to refer to the appropriate
parallel provision as context dictates. The same applies to citations of statutes or regulations
found in quoted court decisions.

case is thus ripe for review under 42 U.S.C. § 405(g).[2] The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

## II.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

Coheley was 36 years old at the time of the Commissioner's decision on July 29, 2009. (Tr. 67, 153). She has a high school education and attended one year of college, and she previously worked as a dental assistant, cashier, and certified nursing assistant. (Tr. 88, 147, 151). Coheley alleges she has been unable to work since May 24, 2007, because of staph infection, pneumonia, breathing difficulty, migraine headaches, and bipolar disorder. (Tr. 146, 188).

Coheley protectively filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on May 25, 2007, alleging disability beginning May 24, 2007 (Tr. 127-32, 153). The Social Security Administration denied these applications (tr. 94-102), after which she timely requested and appeared at a hearing before an administrative law judge ("ALJ"). (Tr. 61-92, 103).

In a hearing decision dated December July 29, 2009, the ALJ found Coheley

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

not disabled. (Tr. 49-60). The ALJ reviewed her medical record and evaluated her subjective testimony. (Tr. 51-59). The ALJ found that Coheley's affective disorder and migraine headaches were severe impairments (Tr. 51, finding no. 3). However, the ALJ determined that Coheley retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels (Tr. 26, finding no. 5). The ALJ further found Coheley was capable of understanding, remembering, and carrying out simple instructions; exercising basic judgment in the work setting; dealing effectively with coworkers and supervisors; and adjusting to changes in routine work settings; but she should avoid exposure to strong chemicals, fumes, and odors. (Tr. 54, finding no. 5). Relying in part on testimony from a vocational expert ("VE"), the ALJ found Coheley could perform her past relevant work as a cashier. (Tr. 59, finding no. 6). As a result, the ALJ found Coheley was not disabled from May 24, 2007 through July 29, 2009, the date of the decision. (Tr. 60, finding no. 7).

The Appeals Council ("AC") denied Coheley's Request for Review on April 25, 2011. (Tr. 34-38). Subsequently, the AC set aside its earlier action to consider additional evidence submitted by Coheley (Tr. 32). The AC then again denied Coheley's Request for Review on July 29, 2013 (Tr. 13-18).

## III.   STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.

3

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

4

Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. Id.

## V.   ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[3] However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Coheley urges this court to reverse the Commissioner's decision to deny her benefits on several grounds. (Doc. 12 at 1). She first contends that the ALJ failed to consider all of her impairments and their severity. Second, she alleges that the ALJ

---

[3] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

improperly gave little weight to the opinions of Dr. Wilson, the physician who examined Coheley upon an attorney referral. Coheley next asserts that the ALJ relied on VE testimony that was in response to a hypothetical question that did not include all of her limitations and impairments. Finally, she argues that the ALJ failed to develop evidence of the physical requirements for a cashier. In addition to her arguments against the ALJ's findings, Coheley also argues that additional evidence submitted to the Appeals Council required a new ALJ hearing. In its review, this court finds that the ALJ applied the correct legal standards and his decision was supported by substantial evidence. The court also finds that the Appeals Council properly denied review.

### A.    The ALJ Made No Reversible Errors In His Findings On Claimant's Impairments And Their Severity

Coheley's argument in her memorandum is underdeveloped and difficult to construe.[4] She contends that the ALJ only acknowledged two impairments — "affective disorder and migraine headaches" — and "failed to consider the impairments of depression, bipolar disorder, panic attacks, insomnia, carpal tunnel syndrome and hypertension." (Doc. 12 at 30). The court interprets her to be arguing

---

[4] The court also notes that Coheley's "Reply in Support of Disability" (doc. 14) does not respond to any part of the Commissioner's brief (doc. 13), nor does it make any new arguments. Rather, it merely repeats some of the same arguments from her first brief (doc. 12) nearly verbatim.

7

both (1) that the ALJ incorrectly found that some of her impairments (bipolar disorder, panic attacks, insomnia, carpal tunnel syndrome, and hypertension) are non-severe and (2) that the ALJ did not consider the effects of those same impairments when assessing her RFC. (Doc. 12 at 30). The court will look at each of these arguments in turn.

As a threshold matter, the court notes that "affective disorder" is an umbrella term for various mood disorders that includes depression and bipolar disorder. *Merriam-Webster's Medical Dictionary*, 2014. The ALJ found Cohelely's affective disorder and migraine headaches to be impairments. (Tr. 52). Because the ALJ found the claimant to have two severe impairments, even an erroneous failure to find other impairments to be severe would be harmless. *See, e.g., Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (unpublished) (stating that because the ALJ found several of claimant's impairments to be severe, and properly considered all the impairments at later steps, his mistaken failure to find other impairments severe was harmless error). Therefore, the court need not and will not decide whether the ALJ should have found any of Coheley's other impairments to be severe.

As to Coheley's second argument — that the ALJ did not consider all her impairments when evaluating her RFC — the record shows that the ALJ considered "[Cohelely's] mental impairments . . . singly and in combination" when deciding that

8

she did not have one of the listed impairments. (Tr. 52). This still leaves the question of two non-mental impairments — hypertension and carpal tunnel syndrome — that Coheley asserts in her brief. (Doc. 12 at 30).

Coheley was prescribed medicine for high blood pressure by Dr. Clinton Allen on October 29, 2005. (Tr. 380-81). On December 1, 2005, Dr. Allen reported that her blood pressure was "much better controlled now on her medications." (Tr. 369). As of February 9, 2009, Coheley reported that she was continuing to take this medication. (Tr. 191, 194). There is no evidence on record that her blood pressure ever became worse and affected her ability to work.

Carpal tunnel syndrome is referred to in Coheley's brief, but she does not cite any medical records describing the condition. The court's examination of her medical records found that on October 31, 2005, Dr. Clinton Allen diagnosed her with "some carpal tunnel symptoms in her right hand waking her up at night tingling with pains into her fingers." (Tr. 372). The court has not found any information in later medical records regarding her symptoms of carpal tunnel syndrome. Nothing in the record gives any indication that hypertension or carpal tunnel syndrome impaired her ability to work, and they were mentioned neither in her application for benefits nor in her hearing before the ALJ. (Tr. 146).

Therefore, the court's review of the record concludes that there were no

9

reversible errors in the ALJ's findings on Coheley's impairments and their severity.

**B.     The ALJ Made No Errors In His Consideration of Dr. Wilson's Testimony**

Coheley argues that the ALJ was improper in giving little weight to the opinion of Dr. David Wilson because the evaluation was the result of an attorney referral. (Doc. 12 at 23). Coheley cites a lengthy collection of cases, only some of which are relevant to this issue, to argue that it was improper for the ALJ to discount Dr. Wilson's opinion. The most relevant is a Ninth Circuit decision that held, "the <u>mere fact</u> [emphasis added] that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998).   The Ninth Circuit then went on to say that "[e]vidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report." *Id*.

*Reddick* is consistent with the Regulations, which state that an ALJ will give more weight to a treating doctor than to a nontreating doctor and more weight to the degree that a doctor's opinion is supported by specific medical evidence and is consistent with the record as a whole. 20 C.F.R. § 404.1527. This circuit has held that nontreating examiners, unlike treating physicians, are not entitled to any deference

10

from the ALJ. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see also Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) (unpublished).

Furthermore, statements by a physician that a claimant is "disabled" or "unable to work" are not entitled to any special deference because they "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d); *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) ("although a claimant's physician may state he is "disabled" or "unable to work" the agency will nevertheless determine disability based upon the medical findings and other evidence").

In this case, the ALJ properly evaluated Dr. Wilson's opinions when he wrote,

the opinion of David Wilson, Ph.D., at Exhibits 11F (R-561-566) and 15F (R-589-597), is also afforded little weight. Although Dr. Wilson did actually examine the claimant, there is no evidence that he had access to the claimant's entire medical records and his opinions are based solely on two examinations and the claimant's own report of her problems and symptoms. Dr. Wilson opined that the claimant's "level of disturbance was so severe that it was unlikely that she would be able to maintain employment." This opinion is not consistent with the medical record as a whole. It is emphasized that the claimant underwent the examinations that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the reports. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

11

(Tr. 58).

The record shows that Dr. Wilson, a licensed psychologist, first examined Coheley on March 5, 2008, following referral by her attorney, Rose Allenstein. (Tr. 561-66). During this interview, Dr. Wilson found her mood and mental status to be normal, but wrote that she reported panic attacks around large groups of people, frequent depression and insomnia, and occasional manic episodes. (Tr. 564-65). He conducted psychological testing, which he described as "indicative of significant distress and disturbance." (Tr. 565). He concluded his notes by saying that her "level of disturbance is so severe that it is highly unlikely that she will be able to maintain employment." (Tr. 566).

On June 10, 2009, after the hearing before the ALJ but before the decision was announced, Dr. Wilson again evaluated Coheley. (Tr. 591-97). He observed that "her speech was a bit rapid at times and tended to talk on and on" and that she seemed "manic," but was also "cooperative and respectful," was "alert and oriented," and had "intact" "thought processes." (Tr. 594-95). The psychological testing he conducted again indicated "significant distress and disturbance." (Tr. 596). He stated that "[h]er overall level of disturbance is still so severe that it is highly unlikely that she will be able to maintain employment." (Tr. 596).

In this case, the ALJ's decision to give little weight to Dr. Wilson's opinions

applied the proper legal standards and was supported by substantial evidence. First, and most importantly, as a nontreating physician, none of his opinions are entitled to any special deference, unlike treating physicians. *McSwain*, 814 F.2d at 619; 20 C.F.R. § 404.1527(c)(2). Second, Dr. Wilson's conclusions that the claimant was unlikely to be able to maintain employment are findings reserved for the Commissioner, not medical statements. *Bell,* 796 F.2d at 1353-54; 20 C.F.R. § 404.1527(d). Third, the ALJ also properly considered Dr. Wilson's limited knowledge of Coheley's medical records and heavy reliance on the claimant's own report of her symptoms, as grounds for giving little weight to his opinions. 20 C.F.R. § 404.1527(c)(6).

As the ALJ noted, Dr. Wilson's opinions that Coheley's level of disturbance would prevent her from working is not consistent with the medical record as a whole. In particular, it is not supported by the records from her treating physicians Dr. Jay Schecter and Dr. Clinton Allen, who treated her from 1998-1999 and 2005-2008, respectively. (Tr. 343-383, 567-587). These physicians prescribed medications for her migraines and symptoms of anxiety and depression, but never recommended any restrictions on her activities or noted any long-term limitations for her work.

Likewise, CED-MHC, the mental health facility where Coheley has sought treatment since 2002, rated her Global Assessment of Functioning ("GAF") as

between 55 and 58 during the period of her alleged disability.[5] (Tr. 493-507, 599). As used by the *Diagnostic and Statistical Manual of Mental Disorders*, published by the American Psychiatric Association, scores between 51 and 60 indicate "moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." (Tr. 600). For comparison, scores between 41 and 50 indicate "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." (Tr. 600). Therefore, her treating physicians' reports were clearly inconsistent with the opinions of Dr. Wilson, and provided substantial evidence for the ALJ's RFC assessment.

Because the ALJ used the correct factors in assessing Dr. Wilson's opinions, it was not erroneous to also consider the circumstances under which Coheley came to him for an examination. This is the case even under the Ninth Circuit ruling relied upon by Coheley, which stated that evidence "of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could . . . form a legitimate basis for evaluating the reliability of the report." *Reddick*, 157 F.3d at 726 (emphasis added). Accordingly, the court concludes that the ALJ's RFC finding was supported by substantial evidence, and that he did not commit error by

---

[5] Specifically, from September 13, 2007, the date of the earliest treatment note following her alleged onset date, to March 28, 2008, the last treatment note on record before the ALJ.

14

assigning little weight to Dr. Wilson's opinion.

### C.     There Were No Errors In The ALJ's Reliance On Vocational Expert Testimony

Coheley also asserts that the VE testimony relied upon by the ALJ is fatally flawed. She contends that when the ALJ asked the VE a hypothetical question on Coheley's capability to continue her past work, the ALJ erroneously "assumed claimant had no impairments." (Do. 12 at 31-32). This description misconstrues the question posed to the VE by the ALJ. The ALJ told the VE to assume that "there are no impairments <u>causing limitations to the claimant's exertional abilities</u>, that is, she's not limited in her sit, stand, walk, lift, carry, push or pull [*sic*] by a medical condition." (Tr. 88-89). This was not a denial that Coheley had <u>any</u> impairments, but only an assumption that Coheley's impairments did not limit her <u>exertional abilities</u>.

The hypothetical included recognition of her environmental limitations: sensitivity to "strong odors." (Tr. 89). It also implicitly recognized that Coheley had some psychological limitations by emphasizing what she could do:

> In terms of mental ability, we'll focus on this. Assume the individual would be able to understand English, remembering and carrying out simple instructions; capable of exercising basic judgment in a work setting such as safety issues; able to deal effectively with co-workers and supervisors; able to adjust to changes in a routine work setting.

(Tr. 89). There is substantial evidence on record to support the limitations as described in the ALJ's question. Therefore, Coheley's argument that the VE's testimony was not

proper evidence for the ALJ's decision is without merit.

###    D.    There Were No Errors In The ALJ's Findings That Coheley Is Able To Perform The Requirements of A Cashier

Coheley also objects to the ALJ's findings on the grounds that he "failed to develop evidence of the physical requirements for a cashier." (Doc. 12 at 19-20). Her argument is not entirely clear, but she appears to mean that the ALJ did not develop evidence of Coheley's past work as a cashier. The ALJ found that she was capable of performing her past work as a cashier, which is classified as light and unskilled, and that the job does not require performance of any work-related activities precluded by her RFC. (Tr. 59).

A claimant bears the initial burden of proving that she is unable to perform her previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). This requires "that the claimant not be able to perform [her] past *kind* of work, not that [she] merely be unable to perform a specific job [she] held in the past. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (emphasis in original). "Once that burden is met, the Secretary must prove that the claimant is capable, considering his/her age, education, and work experience, of engaging in another kind of substantial gainful employment which exists in the national economy." *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988). The Eleventh Circuit recognizes that when a claimant has non-exertional impairments, the "preferred method of demonstrating that the claimant can perform

16

other jobs is through the testimony of a VE." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

In this case, there is substantial evidence for the ALJ's findings that Coheley is capable of performing her past work as a cashier. Contrary to Coheley's claim that the ALJ failed to develop evidence of her work as a cashier, the ALJ and VE examined Coheley about her duties as a cashier, such as stocking and checking out customers, during the hearing. (Tr. 71-72). Taking those answers into account along with the whole record, the VE classified her work as a cashier under DOT[6] code 211.462-010, at a light exertional level. (Tr. 88). The ALJ later asked the VE a hypothetical question to determine whether someone with Coheley's age, work history, and limitations could perform any of her past work.[7] (Tr. 89). The VE testified that someone with Coheley's limitations could do several categories of light unskilled work, including as a cashier, assembler, sorter, and a counter and rental clerk. (Tr. 89-90). The VE's testimony forms the basis for the ALJ's findings.

The DOT also is consistent with the ALJ's findings. The ALJ stated that Coheley's previous work as a cashier was a sufficient length of time (at least two months) for her to have learned all the duties associated with it; the DOT states that

---

[6] *Dictionary of Occupational Titles*, Department of Labor (1999).

[7] As discussed in the previous section, the hypothetical question posed to the VE by the ALJ accurately reflected Coheley's limitations.

it requires only <u>one</u> month to learn. *See* CASHIER II, DOT code 211.462-010, 1991 WL 671840. The ALJ also concluded that her RFC could accommodate the physical and mental demands of the work. (Tr. 59). A review of the DOT description for cashier suggests that this is correct. *See* 1991 WL 671840. The ALJ found that the claimant is capable of "understanding, remembering, and carrying out simple instructions;" "exercising basic judgment in the work setting;" and "dealing effectively with co-workers and supervisors," which is consistent with the DOT job description requiring "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "significant" ability in speaking with people. As to the physical requirements, the cashier job requires exerting "up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently." *Id*. The ALJ found no exertional limitations. (Tr. 55). Coheley has not challenged that finding (doc. 12 at 19-20), and physical examinations failed to reveal any exertional problems. (Tr. 59).

Therefore, the ALJ's finding that Coheley is capable of performing her past relevant work as a cashier was based on the correct legal standards and is supported by substantial evidence.

### E.    The Appeals Council Correctly Denied Review Of The ALJ's Findings

Following the ALJ's decision, Cohely submitted additional evidence to the

18

Appeals Council to further support her claim. (Tr. 598-686). The AC denied her request for review on July 29, 2013, stating that the additional evidence did not provide any basis for overruling the ALJ's decision. (Tr. 14-17). Coheley argues that, based upon the evidence she submitted, the Appeals Council should have remanded her claim to an ALJ for a new decision. (Doc 12 at 29).

Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). The AC has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2012). However, the AC must consider evidence that is (1) new, (2) material, and (3) chronologically relevant. *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.970(b)). The new evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). It is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). If these conditions are satisfied, the AC must then review the case to see whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.*

In reviewing the Commissioner's decision to deny benefits, this court must

evaluate any evidence first submitted to the AC. *Ingram*, 496 F.3d at 1257. The new evidence need not satisfy the requirements for a remand under sentence six of 42 U.S.C. § 405(g). *Id.* at 1262. That is, Coheley need not show good cause for her failure to present the evidence to the ALJ. *See id.* Rather, "when a claimant [has] properly present[ed] new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id.*

The evidence presented to the AC fails to meet the standard of new, material, and chronologically relevant. It consists of:

- Dr. Wilson's June 10, 2009, opinion. (Tr. 600-608). This opinion (discussed *supra* pp. 9-14) was considered by the ALJ in his written findings (tr. 56), and so it fails to be new evidence.

- Notes from Coheley's substance abuse treatment program at CED-MCH from June 10, 2009 to November 27, 2009. (Tr. 609-633). Much of these are illegible,[8] but to the extent that they can be read, they do not speak to her inability to work, and so are not material.

- A "Social Security Disability Questionnaire" sent by Coheley's attorneys to Dr. Richard Grant, a physician at CED-MH. (Tr. 634-37). Grant marked "yes" to the question "Is claimant disabled as described above?," where the description said: "A person must be unable to perform any substantial gainful work due to a medical condition . . . of at least twelve months. The impairment must be so severe as to prevent the person from working not only in his or her usual occupation, but in any other substantial gainful work considering age, education, training and work experience." Grant also wrote that Coheley had "bipolar [disorder], Type I," and that he expected the disability to last "12 mo[nths] or more." (Tr.

_____

[8] And Coheley has not explained the contents, describing them in her brief simply as "therapy session." (Doc. 12 at 12).

635).
This piece of evidence merely gives information that is already known (that Coheley had bipolar disorder) or gives conclusions about disability reserved to the Commissioner (that claimant is unable to perform any substantial gainful work). It does not give any <u>specific</u> medical facts that would support the disability claim, and so fails to be material.[9]

- A "Mental Health Source Statement" created and sent by Coheley's attorney and filled out by Dr. Grant on August 5, 2011. (Tr. 643-47). On this form, Dr. Grant gave ratings for Cohely's limitations in specific categories (e.g. "the ability to understand and remember detailed instructions"). However, there is no evidence of what time-frame this attorney-created document concerns. It is unclear whether it is a snapshot of her condition at the time when Dr. Grant last saw her, or if it relates back to the time of her alleged onset of disability. Without some explanation, the court cannot conclude what the chronological relevance of this document is, and so the document cannot be evidence to overturn the ALJ's ruling.[10]

- CED-MH records from March 11, April 8, and August 3, 2011. (Tr. 638-42, 648-49). The only new evidence in these records shows that her GAF score increased to 59 and then 62, where it was previously between 55 and 58. This fact actually works against her disability claim.

- Records from the Riverview Regional Medical Center dealing with a foot injury that Coheley suffered "from a mis-step on the edge of a carpet." (Tr. 650-666, 679). It is not apparent how these records are

---

[9] Furthermore, there are grounds for doubting the reliability of Dr. Grant's assessment. He signed it on June 18th, 2010, but stated that he had last treated Coheley on November 25, 2009, seven months earlier, and wrote that Coheley "is not currently under my care." (Tr. 635-56). He also answered "unknown" to the question "What, in your opinion, was the date of onset of the claimant's disability?" (Tr. 635).

[10] However, the court does note that, unlike the "Social Security Disability Questionnaire" (tr. 634-37), this document does contain some specific medical findings on Coheley's condition that could be material to a disability claim. The record indicates that Coheley has filed another application for Social Security benefits for a later period, and this document could be relevant to that claim if it is explained. (Tr. 1-12).

material to any of Coheley's claimed disabilities in this case.

•      Records from Leesburg Medical Clinic from June 25, 2005,  to April 3,
       2013, dealing with an assortment of complaints, including kidney stones,
       weight loss, foot pain, anxiety, insomnia, depression, bipolar disorder,
       and migraines. (Tr. 667-686). Although some of the records relate to her
       claimed impairments, they only give bare diagnoses (e.g. "depression,
       anxiety, migraines") and prescribe medications. They do not give  any
       new evidence about how limitations on Coheley, and so are not material
       to her disability claim.

None of the evidence presented to the AC by Coheley was new, material, <u>and</u>

chronologically relevant, and so the AC was entitled to deny review of the ALJ's

decision.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the decision of the Commissioner is due to be, and

hereby is, **AFFIRMED**.  A separate final judgment will be entered.

**DONE** and **ORDERED** this the 1st day of December, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge